# Wytheville.

## MILLER, TRUSTEE, v. SMITH AND OTHERS.

### June 10, 1909.

1. APPEAL AND ERROR—*Decree of Appellate Court—Finality—Res-Judicata—What is Concluded—Ex Parte Settlements—Surcharge and Falsification.*—When the *ex parte* settlements of a trustee have been surcharged and falsified by a bill filed for that purpose, and the decree of the trial court has been affirmed by this court with respect to all items of surcharge and falsification, it is a finality not only with respect to the particular items to which the attention of the court was called, but with respect to all the accounts which the trustee had settled before the institution of the suit. New items existing when the former decree was made cannot, as a rule, be added by the trial court when the case is remanded. The former adjudication applies not only to matters actually then adjudicated, but to every point which properly belonged to the subject of litigation, or which the parties, exercising reasonable diligence, might have brought forward at the time.

2. WITNESS—*Credibility—Positive and Negative Statements.*—Where the statements of two witnesses, equally credible, conflict, the positive statements of one, corroborated by the attitude of the other with reference to the subject of controversy, should prevail over the mere negative statements of the other.

Appeal from a decree of the Circuit Court of Rappahannock. Decree for complainants. Defendant appeals.

*Reversed.*

The opinion states the case.

*H. G. Moffett* and *J. A. C. Keith,* for the appellant.

*E. T. Jones, James F. Strother* and *O'Flaherty & Fulton,* for the appellees.

KEITH, P., delivered the opinion of the court.

This cause is a sequel to that of *Smith* v. *Miller,* reported in 98 Va. at page 535, 37 S. E. 10. The parties then before the court are before us now, either in person or by representation.

The original bill was filed to surcharge and falsify the *ex parte* accounts of Robert E. and John B. Miller, who were the trustees of John Miller under a deed dated October 5, 1872. Those accounts had been regularly settled and confirmed in the county court of Rappahannock. The bill alleged that the trustees had failed to charge themselves with a large number of items with which they were properly chargeable, varying in amounts from a sum as small as $5.00 up to one amounting to as much as $2,650. These items are mentioned to show the care with which the accounts were scrutinized by the parties in interest when the bill was filed to surcharge and falsify them.

Another ground of complaint in the bill was that the trustees had become purchasers at the sale made by them of two parcels of land, one containing 275 acres and the other 600 acres, known as the "Hog Back" tract.

The circuit court, as the result of a long and tedious litigation, the record of which covers nearly 800 pages, sustained some of the items surcharged and falsified in the bill and overruled others, and denied the relief prayed as to the two tracts of land just mentioned.

On appeal by the plaintiffs from this decree, this court was of opinion that the decree was erroneous with respect to the two tracts of land containing, respectively, 275 and 600 acres, and to that extent reversed the decree; but it was "further decreed and ordered that in all other respects the said decree of February 12, 1898, be affirmed." The cause was remanded for further proceedings, as a result of which the lands before

mentioned were resold at a price considerably in excess of that which they had brought at the first sale; accounts were ordered, reported and excepted to, with the result that decrees were entered in June, 1908, and at the July term, 1908, by which John B. Miller was charged with the sum of $600 with interest thereon from the 14th day of April, 1882, and with one-fourth of the proceeds of the resale of the "Hog Back" tract.

Though the accounts of the trustees, which had been regularly settled and confirmed, were closely scrutinized by the parties in interest, neither in the court below nor in this court was the item of $600, now in dispute, ever referred to. It appears in the original record at page 124, under date of April 14, 1881, as a credit to the trustees of cash paid the administrator of Mary Miller; but it does not appear that the trustees charged themselves with that sum. If it was improperly omitted, it was a proper subject of surcharge and falsification, which the parties had ample opportunity to make.

Our procedure with respect to surcharge and falsification of settled accounts is liberal and simple. As far back as *Shugart's Admr.* v. *Thompson's Admr.,* 10 Leigh, 452, it was held that where on an order of account proofs are adduced, which, though they do not sustain the specific objections taken to the bill, ascertain that the settlement may be justly surcharged in other respects, although according to the strictest and most formal practice the plaintiff may be required to amend his bill and urge therein the objections made to the settlement shown by the evidence, yet it is competent for the court to dispense with this proceeding, and permit the plaintiff to proceed in respect to the objections shown by the evidence in like manner as if they had been noticed by the bill. But if the defendant objects that he was surprised by the new objections to the account, the court may and ought to give him time to combat them; and if he urge the privilege he would have by answer to an amended bill, to explain and defend the account in these

respects, such privilege should be secured to him, by allowing him to file his affidavit containing such explanation and defense, and by giving to such affidavit the like credit and effect, as his answer containing the like matter would be entitled to.

In *Corbin* v. *Mills,* 19 Gratt. 438, it is said: "The accounts of an executor which have been regularly settled in the mode prescribed by law, are to be taken as *prima facie* correct. They are liable to be impeached on specific grounds of surcharge and falsification to be alleged in the bill, but the court will not decree an account, upon a general allegation that the settled accounts are erroneous. When an account has been ordered upon a proper bill, if an additional objection to the settled accounts is discovered in the progress of the cause, the plaintiff may raise the objection before the commissioner, with a proper specification in writing, and the defendant may meet the objection by an affidavit, which shall have the same weight as an answer would have had if the matter had been alleged in the bill." And that is the established mode of procedure in this State. *Dickinson* v. *Helms,* 29 Gratt. 466; *Leake's Exor.* v. *Leake,* 75 Va. 804; *Blackwell's Admr.* v. *Bragg,* 78 Va. 540; *Davis* v. *Morris,* 76 Va. 34.

The accounts of the trustees, therefore, which were regularly settled before the county court of Rappahannock, are *prima facie* correct, except so far as they were surcharged and falsified in the mode indicated; and this remedy was open to any party in interest who felt himself aggrieved.

When the circuit court entered its decree, and that decree was appealed from and with respect to all items of surcharge and falsification was affirmed by this court, it was a finality, not only with respect to the particular items to which the attention of the court was called, but with respect to all the accounts which the trustees had settled before the institution of the suit.

"Every decision of the court of appeals, whether it be upon an interlocutory or a final decree, is in its nature final  *  * . * and the quality of finality is imparted to the decree appealed

from, whether that decree was final or interlocutory." *Mathews*
v. *Progress Distilling Co.,* 108 Va. 777, 62 S. E. 924; *Campbell's Ex'or* v. *Campbell's Ex'or,* 26 Gratt. 649.

Appellant, therefore, may well rely upon his plea of *res
judicata,* which applies, except in special cases, not only to all
matters actually adjudicated on the former hearing, but to
every point which properly belonged to the subject of litigation,
or which the parties, exercising reasonable diligence, might
have brought forward at the time. *Diamond State Iron Co.*
v. *Rarig,* 93 Va. 595, 25 S. E. 894.

Every litigant should have opportunity to present whatever
grievance he may have to a court of competent jurisdiction;
but having enjoyed that opportunity and having failed to avail
himself of it, he must accept the consequences. "It is to the
interest of the republic that there should be an end to controversy."

We are of opinion that the circuit court erred in charging
the appellant with the sum of $600 and accrued interest.

With respect to the other assignment of error, it appears to
depend upon a question of fact. John B. Miller, the appellant,
executed to Edward T. Jones a bond for $400, of date February
5, 1903. On September 23, of that year, that bond with its
accrued interest was paid. In Miller's deposition he states,
that this bond was the result of a settlement between himself
and Mr. Jones, in which he was charged with $341.51, which
he claims was the one-fourth interest of Mr. Jones in right of
his wife in the original sale of the "Hog Back" tract; a fee,
for which Mr. Jones held him responsible, of $25.43; and one-
fourth of $187.70 due Mr. Jones as administrator, making an
aggregate of $413.21. For some reason, which does not clearly
appear from the record, the item of $341.51 was reduced to
$318.81, making together with the other items $390.51, to
which was added $9.49 for sundries, and the bond given for

the aggregate sum of $400, which has been paid as before stated.

Mr. Jones in his statement admits that the exhibit filed with Miller's deposition is in his handwriting, but says that he cannot recall how the figures were reached. Miller claims that Mr. Jones agreed not to hold him responsible for the profits on the resale of the "Hog Back" tract, because he (Jones) had thought that the sale made by the trustees, which was subsequently annulled by a decree of the court of appeals, was a good one, and that Miller should be held to it; but this Mr. Jones, in his statement referred to, denies. Mr. Miller's recollection of the transaction is in a measure corroborated by the depositions given by himself and R. E. Miller in this suit (see original record, pp. 399, 510), in which it is shown that Jones considered the price at which the land sold was a good one and more than he (Jones) or anyone else would give for it; and these statements are nowhere denied in the record.

When we consider that the deposition of the appellant, John B. Miller, is clear and positive; that it is fortified by the production of a statement in the handwriting of Mr. Jones, and is corroborated by the attitude of the latter with respect to the sale of the "Hog Back" tract of land, as shown by the uncontradicted depositions of R. E. and John B. Miller; and that upon the other side there is the negative testimony of Mr. Jones, we are obliged to conclude that the bond of $400 embraced the share of Mr. Jones in the proceeds of sale of the "Hog Back" tract, and was given in settlement of his interest in the purchase money.

It presents for decision a question in no respect involving the credibility of the parties to the controversy. Doubtless both of them have stated the facts as they believe them to be; but for the reasons stated we are of opinion that the decree appealed from is erroneous in charging the appellant with the

payment to E. T. Jones of one-fourth of the proceeds of the resale of the "Hog Back" tract.

The decrees of the circuit court must be reversed, and the cause remanded for further proceedings, to be had therein not inconsistent with this opinion.

*Reversed.*