COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judge AtLee and Senior Judge Humphreys
Argued at Williamsburg, Virginia

INTEGRATIVE PAIN SPECIALISTS

MEMORANDUM OPINION* BY
v.      Record No. 0167-25-1      JUDGE RICHARD Y. ATLEE, JR.
FEBRUARY 17, 2026

WHOLE FOODS, ET AL.

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Philip J. Geib (Philip J. Geib, P.C., on brief), for appellant.

Rachel Hussein (Robert McAdam; Kalbaugh, Pfund & Messersmith,
PC, on brief), for appellees.

On January 14, 2025, the Workers' Compensation Commission issued an opinion

denying Integrative Pain Specialists's (provider) claim for reimbursement for medical services

on the grounds that it was invalid under Code § 65.2-605.1(F). On appeal, the provider assigns

error to the Commission's interpretation and application of Code § 65.2-605.1(F). For the

following reasons, we affirm.

I. BACKGROUND

"In reviewing a decision of the [C]ommission, we view the evidence in the light most

favorable to . . . the party prevailing below." *Starbucks Coffee Co. v. Shy*, 61 Va. App. 229, 238

(2012).

On May 7, 2016, Tamela Majors was injured while working for Whole Foods

(employer), resulting in an award for lifetime medical benefits. The provider rendered medical

care to Majors for the injuries she sustained in the accident. On March 17, 2020, the provider

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

filed a claim with the Commission pursuant to Code § 65.2-605.1(F) seeking reimbursement from the employer for the medical services it provided to Majors. In its claim, the provider expressly stated that it "d[id] not request a hearing on [its] claims . . . at [that] particular time." The provider filed a second claim pursuant to Code § 65.1-605.1(F) on December 1, 2022, again indicating that it did not wish to pursue an evidentiary hearing at that time.

In March 2023, the provider requested an evidentiary hearing on its previously filed claims.[1] Following the evidentiary hearing in May 2024, a deputy commissioner issued an opinion denying the provider's March 2020 claim for lack of standing. The deputy commissioner based its determination on two management services agreements that the provider entered into with third-party companies.

In the first agreement, which the provider entered into in 2014, the provider assigned its rights to bill and collect on its workers' compensation claims to Ancillary Medical Solutions, LLC. In 2016, Ancillary Medical Solutions assigned its interest in the provider's workers' compensations claims to another third-party company, StreamCare, LLC. The provider then entered the second management services agreement in March 2020, directly assigning StreamCare the rights to bill and collect on its workers' compensation claims. StreamCare retained the provider's collection rights until November 2021.[2] Relying on these assignments,

---

[1] Prior to the evidentiary hearing, the parties stipulated that the employer made its last payment to the provider on April 23, 2021. This stipulation effectively established that the provider's December 2022 claim was not timely filed. *See* Code § 65.2-605.1(F) (requiring claims to be filed within one year of the date of the last payment). Thus, the only claim in dispute at the evidentiary hearing was the March 2020 claim.

[2] The provider terminated its agreement with StreamCare in November 2020 and, pursuant to the terms of the agreement, the assignment expired twelve months later.

the deputy commissioner found that the March 2020 claim was void because, when it was filed, the provider had no right to receive payment on its workers' compensation claims.[3]

The provider appealed the deputy commissioner's opinion to the full Commission. After reviewing the record and the parties' written statements, the Commission issued an opinion in January 2025. The Commission found that the provider's March 2020 claim was a "non-specific claim" that sought to "preserve all potential rights," and, thus, it was neither valid nor enforceable under Code § 65.2-605.1(F). The Commission acknowledged but expressly declined to adopt the deputy commissioner's finding that the provider lacked standing to file the March 2020 claim. The provider now appeals.

## II. ANALYSIS

The provider argues that the Commission erred in determining that the March 2020 filing was not a valid "claim" within the meaning of Code § 65.2-605.1(F). The provider contends that Code § 65.2-605.1(F) is unambiguous and requires only that a provider must file an assertion of rights to contest the sufficiency of payment for services rendered within the prescribed statutory period. We agree.

"Decisions of the [C]ommission as to questions of fact, if supported by credible evidence, are conclusive and binding on this Court." *Shy*, 61 Va. App. at 238 (quoting *Manassas Ice & Fuel Co. v. Farrar*, 13 Va. App. 227, 229 (1991)). "However, the [C]ommission's legal determinations are not binding on appeal and will be reviewed de novo." *Id.* (quoting *Wainwright v. Newport News Shipbuilding and Dry Dock Co.*, 50 Va. App. 421, 430 (2007)); *see also VACORP v. Young*, 298 Va. 490, 494 (2020) ("[A]n issue of statutory interpretation is a

---

[3] The deputy commissioner also found that, even if the provider had a right to receive payment on the claim, Code § 65.2-605.1(F) does not allow providers to file "protective claims."

- 3 -

pure question of law which we review de novo." (alteration in original) (quoting *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007))).

Code § 65.2-605.1(F) provides that a health care provider must "submit a claim to the Commission contesting the sufficiency of payment for health care services rendered . . . within one year of the date the last payment is received by the health care provider." The provider contends that the statute only requires that a claim be timely *filed* to be valid. It argues that "claim" merely means an assertion of rights and that it is immaterial whether the claim immediately requests an evidentiary hearing. The employer argues that, because the provider expressly stated in the March 2020 claim that it declined to pursue an evidentiary hearing at that time, the provider was attempting to indefinitely toll the statute of limitations and the claim was thus invalid. Thus, we are tasked with interpreting the term "claim" within the context of Code § 65.2-605.1(F).

"[S]tatutory interpretation must begin with the text itself to determine the intent of the legislature." *Williams v. Commonwealth*, 84 Va. App. 99, 111 (2025) (alteration in original) (quoting *Davenport v. Util. Trailer Mfg. Co.*, 74 Va. App. 181, 196 (2022)). "When determining that intent, words are 'given their ordinary meaning, unless it is apparent that the legislative intent is otherwise.'" *Davenport*, 74 Va. App. at 196 (quoting *Cox v. Commonwealth*, 73 Va. App. 339, 344 (2021)). "In finding the plain meaning of a word, we will not 'isolate particular words or phrases'; instead, we examine '[the] statute in its entirety.'" *Williams*, 84 Va. App. at 112 (quoting *Ducharme v. Commonwealth*, 70 Va. App. 668, 677 (2019)). Where, as here, a word is not defined by the statute, "courts can look to dictionary definitions to supply [the word's] ordinary meaning." *Davenport*, 74 Va. App. at 196.

As we have recognized, "'[c]laim' can mean different things depending on the context in which it is used." *Williams*, 84 Va. App. at 112. "For example, claim can be defined as '[a]

demand for money, property, or a legal remedy to which one asserts a right.'" *Id.* (alteration in original) (quoting *Claim*, *Black's Law Dictionary* (12th ed. 2024)). It has also been defined as "a demand for compensation, benefits, or payment . . . made in conformity with provisions of . . . workmen's compensation law." *Claim*, *Webster's Third New International Dictionary* (2002).

The employer's position would require us to define "claim" in a manner that would impose additional requirements upon providers to request the claim's adjudication. This interpretation is inconsistent with the plain meaning of the word. The provider's definition, on the other hand, which equates a claim to an assertion of a right for payment, is more consistent with the word's ordinary meaning. Applying this definition, we find that the Commission erred in determining that the provider's March 2020 claim was invalid under Code § 65.2-605.1(F).

Nevertheless, we affirm the Commission's ruling under the right result, wrong reason doctrine. Under this doctrine, "[w]hen the trial court has reached the correct result for the wrong reason, but the record supports the right reason, 'we will assign the correct reason and affirm that result.'" *Perry v. Commonwealth*, 280 Va. 572, 580 (2010) (quoting *Mitchem v. Counts*, 259 Va. 179, 191 (2000)). Application of the doctrine is proper where "the record supports the right reason" without the need for "additional factual presentation." *Id.* When determining whether the record supports the correct reason, we are "not limited to [considering] the evidence mentioned by a party in trial argument or by the trial court in its ruling." *Id.* (quoting *Bolden v. Commonwealth*, 275 Va. 144, 147 (2008)). "Rather, 'an appellate court must consider all the evidence admitted at trial that is contained in the record.'" *Id.* (quoting *Bolden*, 275 Va. at 147)).

Here, we apply the right result, wrong reason doctrine because the record establishes that the provider lacked standing to file the March 2020 claim. The provider assigned its rights to bill and collect payment on its workers' compensation claims to Ancillary Medical Solutions and later to StreamCare. The provider did not possess any interest in its workers' compensation

- 5 -

claims until November 2021 when the assignment concluded.  Thus, the provider had no right to receive payment on the March 2020 claim.  *See Green v. Portfolio Recovery Assocs., LLC*, 83 Va. App. 28, 72 (2024) ("[A]n assignee 'stands in the shoes' of the assignor, obtaining all the assignor's rights and remedies." (quoting *Union Recovery Ltd. P'ship v. Horton*, 252 Va. 418, 423 (1996)).  Accordingly, applying the right result, wrong reason doctrine, we affirm the Commission's judgment in favor of the employer.

### III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the Commission.

*Affirmed.*